```
1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE MIDDLE DISTRICT OF GEORGIA
2                           VALDOSTA DIVISION

3                        _____

   FLOWERS BAKERIES BRANDS LLC     :
4                   PLAINTIFF    : Case No. 7:12-CR-138(HL)
   v.                            :
5                                :      November 24, 2014
   EARTHGRAINS BAKING COMPANIES   :
6  LLC., BIMBO BAKERIES USA INC. :      Macon, Georgia
                   DEFENDANTS. :
7  _____

8                         DISCOVERY HEARING

9            BEFORE THE HONORABLE HUGH LAWSON
             UNITED STATES DISTRICT JUDGE, PRESIDING
10
   APPEARANCES:
11
   FOR THE PLAINTIFFS:          WILLIAM H BREWSTER
12                              CRYSTAL GENTEMAN
                                NICHOLE DAVIS CHOLLET
13                              1100 PEACHTREE ST STE 2800
                                ATLANTA, GA 30309
14
                                GEORGE R LILLY, II
15                              411 GORDON AVE
                                THOMASVILLE, GA 31792
16
   FOR THE DEFENDANTS:          JEFFERY A HANDELMAN
17                              DANIELLE GILLEN
                                NBC TOWER STE 3600
18                              455 N CITY FRONT PLAZA DR
                                CHICAGO, IL 60611-5599
19
                                J CONVERSE BRIGHT
20                              101 E CENTRAL AVE 4TH FL
                                VALDOSTA, GA 31603
21
                                HOWARD JEROME STRICKLAND
22                              PO BOX 6437
                                MACON, GA 31208
23  _____
                   SALLY L. GRAY, CCR, RPR, USCR
24                      P.O. BOX 853
                     ALBANY, GA 31702
25                    (229-431-2515)
```

1          **P R O C E E D I N G S**

2     **November 24, 2014**

3              **THE COURT:**  I'm sorry, we're late.  I am here

4     appearing informally because I had thyroid surgery last

5     Monday.  I think my mind is clear.  If it's not, you can

6     tell me.  My voice is not good.  So bear with me.  Let's

7     get everybody identified.  Mr. Brewster?

8              **MR. BREWSTER:**  Yes, Your Honor.  Bill Brewster

9     from Kilpatrick Townsend.  George Lily is here.

10             **THE COURT:**  Good morning, Mr. Lily.

11             **MR. BREWSTER:**  And Ms. Chollet and Ms.

12    Genteman, also of our office.

13             **THE COURT:**  Very good.  Thank you.  And, Mr.

14    Handelman?

15             **MR. HANDELMAN:**  Good morning, Your Honor.  Jeff

16    Handelman from Brinks, Gilson, and Lione, and with me

17    today is my colleague, Danielle Gillen, and Mr. Bright.

18             **THE COURT:**  Yes.

19             **MR. HANDELMAN:**  And Mr. Strickland.

20             **THE COURT:**  Yes.  It's amazing what will induce

21    Mr. Bright out from under his rock in Valdosta.  It's

22    good to see all of you, and I hope y'all have a good

23    holiday season.  The movant here is the plaintiff; is it

24    not?

25             **MR. BREWSTER:**  Yes, Your Honor.

1          **THE COURT:**  All right.  Tell me what your

2    problem is.

3          **MR. BREWSTER:**  Your Honor, where should I --

4          **THE COURT:**  Anywhere that suits the court

5    reporter will suit me.  Where would you rather have him,

6    Sally?  Right there.

7          **MR. BREWSTER:**  Is this easier?

8          **THE COURT:**  Probably, yeah.

9          **MR. BREWSTER:**  Good morning, Your Honor.  We

10   represent Flowers Bakeries, the makers of Nature's Own

11   Bread, which is the number one selling bread in the

12   United States.  In this case the defendant, Bimbo, and

13   its affiliated entities, which is the world's largest

14   baker has launched a Nature's Harvest Bread, and they

15   have done it in certain regions to attempt to preempt our

16   expansion or to compete with us in a way that we allege

17   infringes our federally registered trademark.

18       We have an issue which I haven't faced in 27 years.

19   That is, of the documents that the defendant has produced

20   in this case 8,000 of them, 8,000 of about 30,000

21   documents, have been redacted, not for attorney-client

22   privilege, not for another privilege argument, but words,

23   phrases, sentences, paragraphs, and whole pages have been

24   redacted so as to make many of the documents impossible

25   to understand or incomprehensible.  It has been

1    sufficiently extensive that it's interfered with our

2    preparation of the case and our ability to even take

3    depositions without the risk of repeating them.

4         We raised this issue with the defendants in July and

5    viewed it as a very serious issue.  We spent the next

6    couple of months trying to work this issue out.  Of

7    course, there's a protective order that is already in

8    place with respect to this.  We managed in the course of

9    the discussions, not to convince them of our side, but to

10   get them to give us about a dozen random, unredacted

11   documents that, we have suspicions about what's there,

12   show us what you have.

13        When they gave us about a dozen of those, we learned

14   three things.  First, that there were elements that were

15   entirely responsive in the documents.  For instance, they

16   had redacted out sales information for the product at

17   hand.  They had redacted out contacts.  Instead of an

18   e-mail that has eight bullet points in it, they have

19   redacted out all of the text and seven of the bullet

20   points and left us with a single bullet point to guess

21   what this e-mail is about and what that context of that

22   bullet point is.  We learned the documents were

23   responsive.

24        We secondly learned that there were clearly a need

25   to understand what was going on, either in an e-mail

1    string or a document.  They would produce a chart and

2    certain parts of the chart would be redacted so that you

3    couldn't tell what was going on.

4        And thirdly, we learned that there was nothing in

5    the documents, nothing about what was being produced that

6    wasn't going to be protected by the protective order

7    which has designations for confidential, attorneys' eyes

8    only, and outside counsel's eyes only, and designations

9    that would fully protect this information.

10       In early October we reluctantly involved this Court

11   because it is absolutely necessary for us to have these

12   documents.  Again, it's about -- we estimate about

13   28 percent of the documents that have been produced in

14   the case have been redacted in some form.

15       The issue has expanded as well because

16   notwithstanding the fact that the scheduling orders in

17   this case say that each party will produce to the other

18   one the native file if that's requested, and there are

19   some documents in this case that are 14,000 pages, and in

20   order to work with them you would need to have the native

21   file.

22       They have said that they are not producing naive

23   files, notwithstanding the scheduling work, because they

24   can't figure how to redact those.  As a result we're here

25   missing a substantial part of what should have been

1    produced months ago, much less now.

2        There is extensive case law with respect to this

3    issue.  The -- it's hard to describe sort of leading

4    cases, but certainly the majority of the opinions are

5    that redaction is inappropriate, particularly when it's

6    for an issue like only relevance, which is what the main

7    assertion is.  It's, we're producing you that e-mail with

8    those seven bullet points, but one of them is about

9    Nature's Harvest and one of them is about one of our

10   other breads.

11       Well, the fact that it's about another product

12   doesn't make it irrelevant to the case.  First, you need

13   it to understand the context.  In addition, the issues in

14   this case that relate to likelihood of confusion involve

15   things like channels of trade, how customers react,

16   advertising, intent, and all of those issues are going to

17   be demonstrated in these kinds of documents, but you need

18   to see the context in order to be able to see those.

19       In one such case, Bartholomew v. Avalon Capital

20   Group, which is in our letter to the Court, 278 F.R.D.

21   441, the court said:  Redaction -- and I'm reading this

22   in part because it's an incredibly short summary of our

23   argument.

24       (Reading):  Redaction is an inappropriate tool for

25   excluding alleged irrelevant information from documents

1    that are otherwise responsive to discovery requests.  It

2    is a rare document that contains only relevant

3    information, and irrelevant information within a document

4    that contains relevant information may be highly useful

5    to providing context for the relevant information.

6         Federal Rule 34 concerns the discovery of documents.

7    It does not concern discovery of individual pictures,

8    graphics, paragraphs, sentences, or words within those

9    documents.  Thus the court views documents as relevant or

10   irrelevant, courts do not as a matter of practice waive

11   the relevance of particular pictures, graphics,

12   paragraphs, sentences or words, et cetera.

13        This is the only interpretation of Federal Rule 34

14   that yields just, speedy, and inexpensive determination

15   of every action and proceeding.  The interpretation is

16   buttressed by the fact that the rules do not grant

17   parties the power to unilaterally redact information on

18   the basis of relevance.

19        The Federal Rules of Civil Procedure explicitly

20   provide when a redaction may be used, and it cites to

21   Rule 5.2.  The Federal Rules of Civil Procedure also

22   explicitly provide a method for a party to object to a

23   request for production of documents.  This method does

24   not include explicitly the option of producing redacted

25   documents.  In addition, the rules also provide parties

1    with the option of bringing a motion for a protective

2    order, which, of course, they did not do in this case.

3        It's a nice summary of what the issues are.  Their

4    objections are essentially twofold.  Relevance, when

5    we're at the very beginning of production of documents,

6    much less what's going to be used in the case, and that

7    the information is sensitive.

8        The Court has entered a protective order in the

9    case.  The parties are well aware of what obligations

10   that order brings to them, and there is no suggestion

11   that there would be any issue between the counsel for

12   parties in this case with respect to that information.

13       *Orion Power*, which is also cited in the letter:

14   Defendants' novel interpretation of their discovery

15   obligations is not supported by Rule 34 and would open a

16   fertile new field for discovery battles.

17       Rule 34 talks about production of documents as

18   opposed to the relevant information contained in those

19   documents.  It is at least implicit the duty to produce

20   documents that they are kept in the usual course of

21   business includes the substantive content of those

22   documents.

23           **THE COURT:**  These readings are not helpful.

24           **MR. BREWSTER:**  So, Your Honor, the arguments

25   here, the terms that the party compete, the protective

1    order is in place, and additionally those concerns are a

2    two-way street.  We've produced our documents equally

3    competitive in an unredacted form.  There isn't any

4    reason to believe -- we don't have any doubts that

5    counsel is handling those appropriately.  There oughtn't

6    be any doubts that we would be doing the same.

7         The cases that they cite fall into one of three

8    categories.  The first category are cases that are both

9    ERISA cases, and they both involve classes, and the issue

10   is whether if a class is trying to litigate about one

11   plan, one benefit plan, whether it's okay to redact

12   information about other unrelated plans.

13        And in a couple of cases in ERISA context involving

14   plans, the courts have said that they could.  In part

15   because they're looking at a handful of documents and the

16   court is able to even in camera inspect the document, for

17   instance, the minutes of a board meeting and say, that's

18   fine, you don't need to produce that, but not dealing

19   with any volume of documents.

20        The second category is two situations involving

21   civil rights actions where the parties were seeking

22   personal information, and the court said personal

23   information about protesters or an interview could be

24   redacted.

25        And, finally, there's a personal injury case where

1   the plaintiff was seeking information from a parts

2   manufacturer that was completely unrelated.

3       Outside of those contexts, there are no cases that

4   say that when you're producing documents to the other

5   side you can redact out the content of those e-mails,

6   PowerPoint presentations, or other materials.

7       We attached four examples to the letter that

8   included what had been redacted and then these were four

9   of the 12 among the 8,000 that they had provided to us.

10      In the first of those, the redactions are, as I

11  described, all but a single bullet point.  It's

12  impossible to understand what's going on in the e-mail or

13  in what context this bullet point would be understood.

14      The second, they redacted all of the content of an

15  Excel spreadsheet except for the category headings, and

16  what's contained in the unredacted version is sales

17  information, pricing information, and others that would

18  be relevant including to damages.

19      The third, in every store in the bread isle the

20  stores have a layout where they believe that the bread

21  should be, and so Nature's Own should be here, and

22  Nature's Harvest should be here.

23      In this particular layout or proposal that they

24  made, they redacted out all of the other breads except

25  for Nature's Own and Nature's Harvest.  Don't understand

1    where the other Flowers products might be, where the

2    defendant's other products might be, where the store

3    brands might be.  Everything has been redacted out of

4    this document so as to make it of no value.

5        And, finally, the last is another e-mail.  It says:

6    Thanks, Dan, don't give them an inch.  And redacted out

7    are the other data points other than the reference to

8    Nature's Own.

9        Your Honor, these are four examples because we asked

10   for 12 random, and we came up with four situations in

11   which this not only wasn't irrelevant, it was clearly

12   relevant and central to understanding what the context

13   would be.

14       Again, this isn't, putting privilege aside, a

15   situation that I have encountered.  There's no question

16   that there's a protective order in place.  Some of the

17   cases say if there's not a protective order, you may to

18   do this.  But this is a situation where we clearly need

19   unredacted versions of these documents, and they should

20   be produced so that we can proceed with the depositions

21   that the defendants have been postponing while it held

22   out this issue of deciding these redactions.

23       We've now been pushed very late, the parties

24   continue to fall over each other.  We've given -- made

25   our witnesses available.  The depositions of our

1   witnesses are going to be complete in the next few weeks.

2   They decline to give us dates for their witnesses until

3   this type of issue is resolved, and now we've got the

4   dates in December, but we don't yet have documents.  And

5   we're not going to be able review 8,000 documents and

6   have them fully processed and ready to go by the time

7   that is set.

8        It's clear the Court should give them a specific

9   date to produce unredacted versions of all of these

10  documents and give us sufficient time in order to be able

11  to then review them, complete our depositions of their

12  parties so we can proceed orderly with this case.  We

13  would very much like to do so.  Thank you, Your Honor.

14       **THE COURT:**  Thank you.  Mr. Handelman, explain

15  to me why this problem can't be handled within the

16  parameters of the confidentiality agreement?

17       **MR. HANDELMAN:**  Well, Your Honor, our concern

18  is this.  These documents, as counsel indicated,

19  typically will cover the umbrella of memos, PowerPoints

20  that cover not only the Nature's Harvest brand, but also

21  other brands that Bimbo sells that compete directly with

22  Flowers.  And so our concern is that when plaintiff

23  submits a document, for example, on a motion with this

24  court or during the trial, if these documents are not

25  redacted to protect the sensitive information about

1    brands that have nothing to do with this case, that

2    information will come in on motion, at trial and become

3    -- unless the record is sealed become part of the public

4    record along with the Nature's Harvest information.

5    Likewise, should the case go up on appeal, we're all

6    aware of the Eleventh Circuit policy, which is in favor

7    of making court records available to the public.

8         So the protective order does not address the

9    concern, which is namely that, unless this information

10   about non-relevant products that compete with other

11   brands of Flowers that has information about marketing

12   strategy, pricing, and sales, all of this highly

13   sensitive information, unless that information is

14   redacted, then when Flowers submits a PowerPoint about

15   Nature's Harvest, if it's not redacted, all of the other

16   information about, for example, Sara Lee Bread, muffins,

17   the Earthgrain muffins, and the list goes on with respect

18   to other unrelated, irrelevant brands that have nothing

19   to do with this case.  We've got sales information,

20   marketing information, and so on that would come in.  So

21   if I could back up and sort of highlight the background

22   and give this dispute some context, Your Honor.

23             THE COURT:  Well, wait a minute, before you

24   give me all that context.  Of course, it goes without

25   saying that your official posture in this case is that

1    the plaintiff's complaint is without merit, and I

2    understand that.  But just for purposes of discussion,

3    let's assume that there is at least a justiciable

4    controversy here, and there is a legal problem that needs

5    to be resolved, and that looking at the case in that

6    light -- and that does not imply in any sense that the

7    plaintiff should prevail.  But assuming that there is a

8    problem here -- and if there's not a problem here

9    somebody is spending a God awful lot of money to send

10   lawyers to talk to me.  If there's a problem here, then

11   how do you suggest we resolve this?  You just say, we're

12   going to redact all of this and you can't have it.  My

13   view has always been let's all put all the stuff on the

14   table and see what we're dealing with.  How am I suppose

15   to deal with this if I adopt your position as face value?

16   I mean, what's your answer to all of that?

17           MR. HANDELMAN:  Well, twofold, Your Honor.  For

18   example, what we are dealing -- and we have some examples

19   that might illustrate the point.  You've got a PowerPoint

20   that has sensitive pricing information, marketing

21   strategy information, about one page, you'll have the

22   Nature's Harvest, which is the brand at issue, but the

23   next page will be about Thomas English Muffins, an

24   irrelevant brand that competes directly with some of the

25   plaintiff's products.

```
1            THE COURT:  Well, you say it's real sensitive.
2      It may be; it may not.
3            MR. HANDELMAN:  Well -- and so Your Honor --
4            THE COURT:  To you everything is sensitive.
5            MR. HANDELMAN:  Well, when you look at the
6      other cases that have looked at redactions in this
7      context -- now, counsel for plaintiff recited from a few
8      cases.  Let me just show you the balance of that very
9      briefly.  Here's a case:  Although not specifically
10     addressed in Rule 26 of Federal Rules of Civil Procedure,
11     other courts have found redaction appropriate where the
12     information redacted was not relevant to the issues in
13     the case.
14           THE COURT:  Who's going to decide that?  How
15     are we going to decide that if we don't know what it is?
16           MR. HANDELMAN:  Well, we could --
17           THE COURT:  Are you going to help me with that?
18     Are you going to decide what's relevant?
19           MR. HANDELMAN:  Well, what we -- we've done our
20     best efforts to redact information about non-relevant
21     products that have not been --
22           THE COURT:  So you say, but nobody has seen it
23     but you?
24           MR. HANDELMAN:  That's correct, Your Honor.
25           THE COURT:  That's what bothers me.  What am I
```

1   suppose to do with that?  You say, well, he said it; so

2   it must be so.

3            **MR. HANDELMAN:**  Well --

4            **THE COURT:**  Well?

5            **MR. HANDELMAN:**  But, Your Honor, parties make

6   calls about relevance in discovery as a matter of course.

7   In other words --

8            **THE COURT:**  They don't do it here.  It's the

9   Court that does it here.

10           **MR. HANDELMAN:**  Well, I mean, perhaps we could

11  come up with a mechanism by which a third party could

12  confirm.  What happened here was we said --

13           **THE COURT:**  I asked you a while ago, how are we

14  going to solve this problem?

15           **MR. HANDELMAN:**  Well --

16           **THE COURT:**  Well?

17           **MR. HANDELMAN:**  What we did here is the

18  plaintiff asked for -- we said if you want to take a look

19  at any documents that have been redacted, let us know,

20  give me the Bates numbers, we'll provide unredacted

21  copies to you on an outside counsel only basis.  They

22  gave us a list of Bates numbers.  We provided them with

23  the unredacted versions of those documents.

24           **THE COURT:**  So you've seen all of those?

25           **MR. BREWSTER:**  No, Your Honor.  Those are just

1        the 12 where we said give us some so we could see --

2                    THE COURT:  12 documents.  12 out of 8,000?

3                MR. BREWSTER:  12 out of 8,000, Your Honor.

4                THE COURT:  Go ahead.

5                MR. HANDELMAN:  Well, Your Honor, if we wanted

6        to set up, for example, a system where an independent

7        third party could look at these redactions to confirm

8        whether or not they are irrelevant, you know, we could

9        discuss setting that up, but what we've done is in making

10       the determination as to what should be produced we've --

11       they've asked for everything having to do with Nature's

12       Harvest.  We've given them everything having to do with

13       Nature's Harvest.  What we haven't give them is

14       information pertaining to other brands that compete with

15       those of the plaintiff.

16           And, as the cases have found, there are a number of

17       cases that have approved of redactions of irrelevant

18       material, especially where the plaintiff and defendant

19       are competitors.  So under that authority we've produced

20       everything -- everything having to do with Nature's

21       Harvest has been produced.  If it has to do with Thomas's

22       English Muffins, we haven't produced it.  It's not

23       relevant and it's sensitive, and that's the approach that

24       we have taken, Your Honor.

25                    THE COURT:  Do you remember the story of

1    Alexander the Great and the Gordian Knot?

2         **MR. HANDELMAN:**  No, Your Honor.

3         **THE COURT:**  Come on.  Somewhere when Alexander

4    was moving through the Middle East on the way to India in

5    some country in the Near East, there was a famous knot

6    that nobody could untie, like one of these pulleys you

7    see in a catalog, and it was brought to Alexander's

8    attention, and it was pointed out that no one had ever

9    been able to untie this knot.  Surely y'all know this.

10   And Alexander looked at the knot, drew his sword, sliced

11   the knot, and went on and conquered the world.

12        This is a Gordian knot.  I've got a sword.  I'm

13   going to slice that knot unless you all figure out a way

14   to resolve this problem.  Do you want to talk about it?

15        **MR. BREWSTER:**  Your Honor, if I might, I

16   believe that the protective order provides the solution

17   already, which is, the documents are to be produced in

18   unredacted form, and then if there's going to be a

19   filing, we are to give them notice of highly confidential

20   or attorneys' eyes only documents with the ability to try

21   to reduce what's even included or how it's cited, or they

22   -- giving them the opportunity to move to redact at that

23   point in time.  The presumption is that the information

24   is relevant and included, but, Your Honor, we're not --

25   this isn't a side show for us.  We're not benefited by

```
1   fighting with them about whether we can file a brief or

2   an enclosure.  We'd be willing to take it up at that

3   point in time, so that this -- they're concerned about

4   trial or appeal.  We're in early discovery.

5            THE COURT:  Listen, what I'm suggesting is that

6   y'all are here in Macon right this minute.  We've got

7   this problem.  Either y'all work it out or I'm going to

8   work it out.  If you have any concerns that you want

9   protected, looks like to me it would be better for you to

10  try to work it out yourselves rather than have me do it

11  with a single slash.  Do you think discussing it would be

12  profitable?

13           MR. HANDELMAN:  I do, Your Honor.

14           THE COURT:  What do you think?

15           MR. BREWSTER:  It always is, Your Honor.

16           THE COURT:  I'm going to be in here.  You're

17  going to be in here.  When y'all have resolved this

18  problem, let me know.

19           MR. HANDELMAN:  Thank you, Your Honor.

20       (RECONVENED; ALL PARTIES PRESENT, 11:30 a.m.)

21           THE COURT:  Mr. Brewster?

22           MR. BREWSTER:  Yes, sir.  I am please to say

23  that we have developed a solution.

24           THE COURT:  Good.

25           MR. BREWSTER:  And it, in brief, sounds like
```

1    this and then there's some language that has been hashed

2    out.  But, in brief, the defendants will produce the

3    documents.  Mr. Handelman has indicated that they likely

4    could do that in about a week, taking into account

5    Thanksgiving, so it may be a little longer, but by some

6    point next week they expect that they could have produced

7    the documents that are at issue.

8            **THE COURT:**  Well, let's drive a peg.  Let's fix

9    a date, a time and date.

10           **MR. BREWSTER:**  Okay.  You guys pick a date.

11           *(Pause, Aside)*

12           **MR. BREWSTER:**  So the defendants will produce

13   unredacted documents by December 5th.  We have adopted a

14   procedure that will hopefully alleviate the defendant's

15   concerns about how this might show up down the road, and

16   essentially what this would be is, the current protective

17   order says if we're going to use one of their documents,

18   we'll give them 14 days notice that we're going to use

19   it.  What we're going to suggest adding to the procedure

20   is that at that point instead of just having to file a

21   motion to seal, we want to avoid that, they can propose

22   back a redacted version, and we'll try to work that out

23   in that time frame before anybody would have to file any

24   motion to seal.  So if we're using a ten-page document

25   and they're concerned about some of it, we'll come up as

1    best we can with an agreement that will redact that

2    document so nobody will need to file a motion to seal.

3    We'll try to avoid having those types of motions as a

4    matter of course.

5            THE COURT:  Well, let's stop right there.  That

6    does not sound like an agreement.  You are talking about

7    things you're going to try to do.

8            MR. BREWSTER:  No, what -- we will agree -- and

9    we've got the language, and we will agree that they will

10   propose redacted versions --

11           THE COURT:  Well, what is the language?  Let's

12   put it in the record.

13           MR. BREWSTER:  Okay.  We've got a whole bunch

14   of language.  I was just going to try to describe it

15   generally.

16           THE COURT:  Well, I mean, what I want is for

17   you to nail it all down.

18           MR. BREWSTER:  We've got it nailed down.

19           THE COURT:  That's good.

20           MR. BREWSTER:  We've got it nailed down.

21           THE COURT:  Well, share it with me.

22           MR. HANDELMAN:  Okay.

23           MS. GILLEN:  So, Your Honor, this is Danielle

24   Gillen, again.

25           THE COURT:  Yes, ma'am.

1          **MS. GILLEN:**  Paragraph six of the protective

2     order, how it currently reads, if you would like me to --

3     I'll go through the language.

4          **THE COURT:**  You do what you need to do.

5          **MS. GILLEN:**  Okay.  So, it's says:  If a party

6     seeks to rely on documents, testimony, or other materials

7     produced by the other side, the producing party, under a

8     confidential attorneys' eyes only or outside attorneys'

9     eyes only designation in support of any motion or during

10    any hearing or trial, the party must notify the producing

11    party at least 14 days prior to filing the motion,

12    hearing, or trial.

13         If the producing party objects to the public

14    disclosure of information, A, it shall propose a redacted

15    version of the information, and the parties shall work in

16    good faith to agree on a mutually acceptable redacted

17    version; and, B, it must state its objection within seven

18    days and immediately file a motion with the Court stating

19    a compelling reason for allowing the materials to be

20    filed under seal, in quotes, Motion to File Under Seal.

21         And then the language keeps -- it says that:  If a

22    party seeks to rely on documents, testimony, or other

23    materials produced by the producing party under a

24    confidential attorneys' eyes only or outside attorneys'

25    eyes only designation in opposition to any motion or

1    reply to any opposition and the documents, testimony, or

2    materials have not otherwise been identified in a motion

3    to file under seal, the party must notify the producing

4    party at least ten business days prior to filing said

5    opposition or reply.

6         If the producing party objects to the public

7    disclosure of information, we included the same clause as

8    before:  A, it shall produce it -- excuse me -- it shall

9    propose a redacted version of the information and the

10   parties shall work in faith to agree on a mutually

11   acceptable redacted version; and, B -- and this language

12   remains -- it must state its objection within seven

13   business days and immediately file a motion with the

14   court stating a compelling reason for allowing the

15   materials to be filed under seal.  The parties agree to

16   work in good faith to prevent the disclosure of material

17   marked as confidential attorneys' eyes only or outside

18   attorneys' eyes only until the Court issues an order on

19   the motion to file under seal.

20        And then, Your Honor, the parties agree that

21   paragraph six only permits when the situation arises if,

22   for example, the plaintiff relies on defendant's

23   documents, then there would be an objection and a motion

24   to seal.  However, we also agreed on a separate

25   provision, for example, if defendants rely on their own

1    documents, the same sort of mechanism applies.  So it's a

2    reworking -- it would be a second paragraph under six.

3    And if Your Honor would like, I can read that into the

4    record as well.

5            **THE COURT:**  Whatever it takes.

6            **MS. GILLEN:**  Thank you.  If a party seeks to

7    rely on documents, testimony, or other materials that it

8    produced under a confidential attorneys' eyes only, or

9    outside attorneys' eyes only designation in support of

10   any motion or during any hearing or trial, the party may

11   notify the receiving party at least 14 days prior to

12   filing the motion, hearing, or trial.  The producing

13   party, A, may propose a redacted version of the

14   information, and the parties shall work in good faith to

15   agree on a mutually acceptable redacted version; and, B,

16   may file a motion within seven business days with the

17   Court stating a compelling reason for allowing the

18   materials to be filed under seal.

19       If a party seeks to rely on documents, testimony, or

20   other materials that it produced under a confidential

21   attorneys' eyes only or outside attorneys' eyes only

22   designation in opposition to any motion or in reply to

23   any opposition and the documents, testimony, or materials

24   have not otherwise been identified in a motion to file

25   under seal, the party may notify the receiving party at

1    least ten business days prior to filing said oppositional

2    reply.

3         The producing party, A, may propose a redacted

4    version of the information and the parties shall work in

5    good faith to agree on a mutually acceptable redacted

6    version; and, B, may file a motion within seven business

7    days with the court stating a compelling reason for

8    allowing the materials to be filed under seal.

9         The parties agree to work in good faith to prevent

10   the disclosure of material marked confidential attorneys'

11   eyes only, or outside attorneys' eyes only until the

12   Court issues an order on the motion to file under seal.

13        **THE COURT:**  Is that your agreement?

14        **MR. BREWSTER:**  Yes, it is, your honor.

15        **MR. HANDELMAN:**  Yes, it is, your honor.

16        **THE COURT:**  Okay.  Is there any other matter

17   that requires resolution here today?

18        **MR. BREWSTER:**  There is, Your Honor, and the

19   parties have also agreed to that.

20        **THE COURT:**  What is that?

21        **MR. BREWSTER:**  Which is, if now -- we had

22   talked about a week, but if they're going to produce

23   their documents by December 5th, we're going to need some

24   time to review those documents and then we're going to

25   need some time to take the depositions that are going to

1   be taken, we would need an extension of the discovery

2   period and deadlines.

3        Discovery is currently set to close around

4   December 24th.  We would like to, and counsel has agreed,

5   to push that out about 45 days because of the holidays.

6   If we could have the discovery period end on

7   February 13th now, we would be able to get everything

8   done, and then the deadlines would follow out from that.

9        **THE COURT:**  How many depositions?

10       **MR. BREWSTER:**  The parties are each taking

11   approximately ten depositions and then there have been

12   two third-party depositions so far, and there are going

13   to be some others of those as well.  We're waiting on

14   some documents to do some more of those.  So there may be

15   -- each side may have five or six third-party depositions

16   in addition to the ten that each side is taking.

17       **THE COURT:**  And that will conclude discovery?

18       **MR. BREWSTER:**  That'll conclude the fact

19   discovery, Your Honor, and the way this deadline works

20   there's a period for expert reports that follows that.

21       **THE COURT:**  Yes.  Okay.  Is that your

22   agreement?

23       **MR. HANDELMAN:**  Yes, Your Honor.

24       **THE COURT:**  All right.  I will extend it out to

25   February 13th.

1          **MR. BREWSTER:**  Thank you, Your Honor.

2          **THE COURT:**  What else?

3          **MR. HANDELMAN:**  I believe that covers it.

4          **MR. BREWSTER:**  I think that does, Your Honor.

5    Thank you.

6          **THE COURT:**  I've learned that my letters are

7    not routinely read, but you may recall that at the

8    beginning of this case I wrote counsel and told you that

9    if you had any problems, particularly discovery problems

10   to pick up the phone and call me.  I remind you of that

11   letter, and I invite your call if you have a problem.  We

12   don't need any more of this, and we need to move the case

13   along.  Any question?

14         **MR. HANDELMAN:**  Very well, Your Honor.

15         **THE COURT:**  And I wish you -- you know, don't

16   wait until the last day and say discovery is about expire

17   and midnight and we got 30 thousand pages of stuff we

18   want you to read because I ain't going to read it.

19       Okay.  Well, I thank you for coming.  I hope all of

20   you have a good holiday.  Converse, I know your being

21   here made all the difference.  Good to see all of you.

22   Take care.

23   _____

24            **CERTIFICATE OF OFFICIAL REPORTER**

25       **I, Sally L. Gray, Federal Official Court Reporter,**

1    in and for the United States District Court for the

2    Middle District of Georgia, do hereby certify that

3    pursuant to Section 753, Title 28, United States Code

4    that the foregoing is a true and correct transcript of

5    the stenographically reported proceedings held in the

6    above-entitled matter and that the transcript page format

7    is in conformance with the regulations of the Judicial

8    Conference of the United States this 31st DAY OF MAY,

9    2015.

10                          */s/ SALLY L. GRAY*
                            *SALLY L. GRAY, CCR, RPR*
11                          *FEDERAL OFFICIAL COURT REPORTER*

12

13

14

15

16

17

18

19

20

21

22

23

24

25